No. 46,238

Karl D. Sulkis, *Appellee*, v. Robert I. Zane, *Appellant*.

(494 P. 2d 1233)

Opinion filed March 4, 1972.

*Robert P. Anderson,* of Payne & Jones, Chartered, of Olathe, argued the cause and was on the brief for the appellant.

*Joseph S. Davis, Jr.,* of Breyfogle, Gardner, Martin, Davis and Kreamer, of Olathe, argued the cause, and *Stephen C. Chambers,* of Olathe, was with him on the brief for the appellee.

The opinion of the court was delivered by

Kaul, J.: This action stems from an intersection automobile accident which occurred on April 28, 1968, in the city of Prairie Village. The intersection of Mission Road and Tomahawk Road was controlled by traffic lights. Plaintiff was westbound on Tomahawk Road and defendant was southbound on Mission Road. Both parties claimed a green light when they entered the intersection.

This appeal is from a verdict and judgment in favor of plaintiff in a second trial of the action. The first trial resulted in a de-

fendant's verdict. Plaintiff's motion for a new trial was sustained on the ground of error in admitting into evidence, over plaintiff's objection, a diagram of the scene of the accident drawn by an officer of the Prairie Village Police Department, who was not called as a witness by either party.

The sole issue on appeal is whether the trial court abused its discretion in granting plaintiff a new trial.

During the first trial, in plaintiff's case in chief, Richard Blum, a Prairie Village Police Officer, was called as a witness. He was the first officer to arrive at the accident scene and according to police department procedure he became the officer in charge of the investigation. It was his duty to obtain factual information—names, addresses, etc.—and to render aid to the injured. Officer Albers, of the Prairie Village Police, was the second officer to arrive. It was his duty to take photographs, make measurements and diagram the accident scene. Albers prepared a diagram which was attached to the police department accident report.

On direct examination Blum was asked to draw a rough diagram of the intersection on a blackboard in the courtroom. He drew the diagram from a "schematic" which he said he had prepared the previous day. From memory and by referring to the diagram of Albers, Blum located the vehicles of plaintiff and defendant as they were following the accident. Blum testified that he did not observe any skid marks at the scene, and he did not draw any on the blackboard diagram.

On cross-examination Blum was interrogated concerning two sets of parallel lines shown on the Albers diagram. One set of lines was drawn in a westerly direction from Tomahawk Road out into the intersection and then are shown to curve to the left or south. On each of these lines the figure 40 appears. The other set of parallel lines was drawn in a southerly direction on Mission Road out into the intersection and curved to the right or west before meeting the first set of lines drawn on Tomahawk Road. On each of the two lines drawn on Mission the figure 30 appears. The two sets of parallel lines were not otherwise labeled, identified or explained by any other figure, marks or notes appearing on the diagram.

Plaintiff objected when Blum was asked to draw the two sets of parallel lines on his blackboard diagram and the objection was sustained. Defendant continued cross-examination of Blum and established that the Albers diagram was attached to the official

police report of the accident. The diagram was detached from the rest of the report, marked defendant's Exhibit N and admitted into evidence over plaintiff's objection.

Blum further testified that although not labeled as such, the parallel lines appeared to be skid marks. Blum was further questioned by defendant concerning lateral movements of defendant Zane's car after the impact. He testified that according to his recollection the Zane vehicle was moved in a lateral direction about ten feet to the west after the impact. On redirect examination Blum was questioned concerning the fact there were no skid marks shown on the diagram indicating lateral movement of Zane's car. When asked if this meant there were no skid marks made by the lateral movement of Zane's car, Blum answered:

"No, sir, it means that the officer who diagramed this particular accident did not put them in, if they were there."

Blum again testified that he did not see any skid marks himself.

In ruling on plaintiff's motion for a new trial, the trial court had this to say:

"And the Court, after having considered said Motion for a New Trial, finds it should be and is hereby granted and sustained. The controlling reason for the granting of the new trial is founded on the fact the Court feels it committed error in receiving the intersection drawing as given by a witness in this cause that was prepared by another officer, who was not, of course, called, was not available for cross-examination. This report did give signs of skid-marks, and these were, of course, exhibited to the jury. And these were bald conclusions on the part of the officer who was not called. The Court feels that this did have an affect upon the results in this case; or if it did not, that it probably could have had an affect on the jury. For that reason, the Court is going to grant and sustain the motion."

On appeal defendant argues the diagram was admissible and if not, then at most, the admission thereof was harmless error and thus the trial court's granting of a new trial was an abuse of discretion.

The granting of a new trial is governed by the provisions of K. S. A. 60-259 (now 1971 Supp.) of the new Kansas Code of Civil Procedure. Where one of the grounds specified in the statute is shown to exist, the granting of a new trial rests in the judicial discretion of the trial court and an order granting or refusing a new trial will not be reversed on appeal unless a clear abuse of discretion is shown. (*Timmerman v. Schroeder*, 203 Kan. 397, 454 P. 2d 522; and *Landscape Development Co. v. Kansas City P. & L. Co.*, 197 Kan. 126, 415 P. 2d 398.)

We do not believe a clear abuse of discretion is shown in this case.

It must be conceded that generally official traffic accident reports are admissible unless they contain information barred by the hearsay rule or conclusions of the officer making the report. Recent cases in which the admissibility of such reports was considered are set out in *McElhaney v. Rouse,* 197 Kan. 136, 415 P. 2d 241. In the *McElhaney* case, upon which defendant relies heavily, we held that an accident report prepared by the testifying witness, Lt. Myers, was not erroneously admitted. It was pointed out in the opinion that the report contained no conclusions of officers or statements of third party witnesses such as recorded in the objectionable reports considered in *McGrath v. Mance,* 194 Kan. 640, 400 P. 2d 1013; and *Letcher v. Derricott,* 191 Kan. 596, 383 P. 2d 533. In *McElhaney,* Lt. Myers had prepared the report and was on the witness stand subject to cross-examination; in the instant case Officer Albers was not in court.

In the case at bar we are not concerned with the admissibility of the full report. The diagram was detached and only it was submitted to the jury.

Generally, a diagram illustrating the scene of an accident and the relative location of objects, if proved to be correct, is admissible in evidence to enable the jury to understand and apply the established facts to the particular case. (8 Am. Jur. 2d, Automobiles and Highway Traffic, § 977, p. 528.) However, where marks or notations, the import of which is not clear, appear upon a map or diagram and the person who made them is not produced as a witness, the map or diagram containing such marks is inadmissible. (29 Am. Jur. 2d, Evidence, § 784, pp. 854, 855.)

In the instant case, as shown by Blum's testimony, the diagram was not only incomplete but contained marks, the import of which Blum had no firsthand knowledge. In order to make the diagram meaningful or understandable to the jury, an attempt was made to have Blum make assumptions and conclusions since he had not observed any skid marks at the scene. He testified there was lateral movement of defendant's car after impact, but he was unable to state whether there were actually marks on the pavement, indicating lateral movement, or whether Albers merely omitted them from the diagram.

The trial court was fully aware of the issues framed by the evidence and the impact of the admission of the diagram under the

circumstances. After observing the witnesses and hearing all of the testimony, the court exercised its discretion and found the admission of the diagram was prejudicial to the plaintiff. Under such circumstances we are unable to say that a clear abuse of discretion is shown in granting plaintiff a new trial.

The judgment is affirmed.